Thank you, Your Honors. May it please the Court, my name is Marcos Sasso of Ballard Sparr, and I represent the appellant. I'll reserve three minutes for rebuttal. The District Court here erred in denying Bridgecrest's motion to compel arbitration because plaintiffs do not seek public injunctive relief within the meaning of McGill. As set forth in the McGill v. Citibank case, public injunctive relief under the unfair competition law is relief that has the primary purpose of prohibiting future injury to the general public. However, relief that has the primary purpose of redressing or preventing injury to plaintiff or to a group of similarly situated people to the plaintiff is private, not public. Here, the District Court erred in finding that the primary purpose of the relief sought was for the general public as opposed to the group of Bridgecrest customers and borrowers identified in the complaint. Again, the test of McGill is not whether there is any benefit to the public or an incidental benefit or even a potential benefit. Here, there is a single claim in the complaint that references public injunctive relief, and that is the fifth cause of action. The other four claims very clearly are only for the plaintiffs, and even in that fifth cause of action, the relief is framed in the context of Bridgecrest borrowers and customers. At paragraph 9 of the complaint, excerpts of record 151, plaintiffs state that they seek an injunction in joining defendants from, one, collecting or attempting to collect deficiency balances from, and I quote, As stated in the complaint, the relief is targeting borrowers and customers in Bridgecrest. It's not targeting the general public or consumers generally. It's for the primary benefit of those Bridgecrest borrowers and customers. Looked at a different way, the heart of the dispute really is the demand for relief to plaintiffs and those similarly situated to them who are those identified customers and borrowers. Our case is different than the Blair versus Rent-A-Center case, where, in that case, the injunction sought to prevent Rent-A-Center from offering loans to the public with excessive prices in violation of the Carnet Rental Purchase Act. And there, that injunction would be for the primary benefit of people that were not yet customers, or to prevent the defendant from entering into future loans with consumers generally. For that reason, what McGill tells us is that it's not simply a matter of alleging that the requested injunction is to prevent future violations, or to prohibit future conduct as to members of the general public that may become customers in the future. Because if that were the test, then really any injunction would be a public injunction. And McGill is clear about drawing a distinction between public and private. And relying on the allegation of simply preventing potential future harm just converts any consumer action against the company into a public injunction relief action. The courts that have looked at this issue, at what constitutes private versus public, have taken holistic views of the complaint. And in that sense, any injunction may have an impact in the future on people who are yet to be customers. But again, that's not the test of McGill. Had that been the case, the Supreme Court in McGill could have simply held that any time a request is made for injunction relief to prevent future harm, it qualifies as a public injunction. But that's not what that case holds. I'd also point, again, to the fact that Blair is not controlling here, and it's distinguishable from our case because, again, in Blair, the nature of that relief was injunction sought to prevent Rent-A-Center from offering loans to the public. And it's, in a sense, from inducing members of the general public from becoming customers. That's different than the sort of targeted class or group of people, borrowers or customers, that are identified in the complaint in our case. And even Blair makes the important point that the key difference between private and public injunction is the primary beneficiary of the relief. So, again, we need to look at the complaint, not the relief that's sought, to see where is the primary beneficiary going. And as alleged here, that is to the borrowers and customers of BridgePrest. I'd also point to the more recent California Court of Appeal decisions that have addressed this issue. And I bring these up for two reasons. One, to address the supplemental authority that was submitted earlier this week, the Maldonado case, as well as the Mejia v. DACM Incorporated case. Both those cases, and starting with the Mejia case, are like Blair, in that the plaintiff in Mejia alleged that the defendant fraudulently induced plaintiffs to purchase a motorcycle with a credit card to avoid complying with lease leverage. The injunctive relief in Mejia was to force the defendant to, and I quote, cease selling motor vehicles in the state of California without first providing consumers with the disclosures mandated by the Civil Code, Section 2982, in a single document. That group of individuals would benefit from the injunctive relief encompassed consumers generally, as it would apply to all consumers who would be informed of the disclosures before purchasing the motor vehicles. That type of injunctive relief would primarily benefit a much broader group than the group we have here, who are, as identified in the complaint, borrowers and customers of Ridgecrest. And even then, only those borrowers and customers that defaulted had vehicles repossessed, had deficiency balances, and would have their vehicles transferred. It does not encompass consumers generally. With respect to the Maldonado decision, very similar distinction there, in addition to the fact that it's an unpublished decision of the California Court of Appeal, but it too focuses upon stopping the defendant from entering into loans or charging unlawful interest rates, and forcing the defendant to adopt corrective avenues. Even the court there noted that the plaintiff sought to enjoin harm in future contracts, not as here with respect to people who've already had their vehicles repossessed. So if the court is to look at the California Court of Appeal to see how they have sorted out this issue, the court should look to Clifford v. Quest Software and Tricillis v. Fitness International. Both are cited in our briefs. In those cases, the relief sought was not for the primary benefit of the general public, but the express beneficiary was the plaintiff and the potential beneficiaries were other employees, not the public at large. The same is true here. The primary benefit of the requested relief is for the plaintiffs and those Ridgecrest customers similarly situated to them. Any benefit to the general public or future customers is incidental or a potential to the relief sought in the case. So what we are not arguing, I think as my opposing counsels framed in their briefs, the argument is not that the requested injunction cannot be deemed private simply because it does not benefit all Californians. The test is what is the primary benefit of what's actually sought and alleged in the complaint. And here, taking that holistic view of the complaint, the primary benefit is for the relief of plaintiffs and those similarly situated to them. Again, the problem with Apelli's characterization and even the district court's order is that it converts any consumer action against a company into a public injunction. The final points I raise before my time runs is we do assert a preemption argument and I recognize the court's decision in Blair. However, since McGill, the Supreme Court has had decisions reiterating the importance of protecting the right of parties to proceed to individual arbitration. Counsel, our panel is bound by Blair, so your argument on that might be raised in a petition for re-hearing in bank. But it's kind of a waste of your time with our panel. I appreciate that, Your Honor. I just raise the point to reiterate that it is a basis for which we do seek appeal. And that it's still ripe for the Supreme Court, if they should take it, to address it. The final point to make, then, is we do argue that the district court erred in voiding the agreement prior to resolution of the appeal. The language in the agreement is such that it's null and void with respect to the proceedings subject to the right of appeal. And our position would be that plaintiff's interpretation is really to replace subject to with but pertains the right to appeal. And we think that's not a fair reading of the language. Also, even if there is an ambiguity, the Supreme Court has said that doubts in interpreting an arbitration agreement should be resolved in favor of coverage. And even most recently in the Lance Plus case, the Supreme Court guided us to tell us that the FAA itself provides the rule when there is ambiguity. What is your response to plaintiffs' sort of proves-too-much argument, your reading of the subject-to language, that if you read it to mean only after an appeal as opposed to we still have the right to appeal, that you could control things by never appealing? So you could basically kill their ability to ever have it voided by never appealing? Well, I think, Your Honor, I think you would – if you never took the appeal and you proceeded with the case and it proceeded to trial and judgment, then I think that would resolve the issue. I think what it does is it simply sets up the scenario where you could either do exactly that, either elect not to appeal and just proceed, or if the case is appealed, and it proceeds to an individual arbitration only to return back once that is resolved. And with that, I see that my time – so I'll reserve the remainder of my time for rebuttal. Thank you. Thank you, counsel. Okay, Ms. Bennett. May it please the Court, Jennifer Bennett for the appellees, the Fernandezes. I want to start by addressing an underlying theme in BridgeCast, particularly its reply brief, which is that public injunctions are just some creative way for consumers who have agreed to arbitrate to get out of their agreements. This Court made very clear in Blair that public injunctions are arbitrable. The only reason that the public injunction in this case is not arbitrable is because the agreement that the Blairs were required to sign when they bought their car said so. So if companies want to ensure that public injunction claims against them go to arbitration, all they have to do is just not exclude those claims from their arbitration clause. Or if they want public injunction claims to go to court but not anything else, again, all they have to do is write their contract to say that. And so this idea that a public injunction is somehow this get-out-of-arbitration-free card is just not right. It's very clear that companies can require these claims to be arbitrated. What they can't do, though, is prohibit consumers from bringing these claims at all at any forum. And so the question about the scope of a public injunction is not really a question about arbitration at all. It's a question about what kinds of injunctions does California law prohibit companies from barring their customers from bringing. And both this court in Blair and the California Court of Appeal in Mejia and Maldonado have made it very clear that an injunction that seeks to protect California consumers from future harm, and now I'm quoting Blair, by enjoining future violations of California's consumer protection statutes, is relief-oriented to and for the benefit of the general public, and therefore a public injunction. And that's exactly what the Fernandezes seek here. And I'm just going to read from the complaint. You know, BridgeCrest argues that they don't seek to prevent future harm to consumers, but that's not right. If we look at ER 159, paragraphs 53 and 54 of the complaint, what the Fernandezes allege is they've listed a number of practices that BridgeCrest is engaging in that are illegal, that affect the public on the previous few pages. And then the Fernandezes argue that BridgeCrest is going to keep doing this unless there is a public injunction. And so what the Fernandezes are seeking is an injunction that bars BridgeCrest from continuing these practices, not just for, you know, current people who currently have their loans assigned to BridgeCrest, but for anybody that ever has their loan assigned to BridgeCrest. It's exactly the same as in Blair and in Mejia and in Maldonado, where the injunction applies not just to current customers, it applies to anybody who will ever do business with the company. And also one, I mean, the difficulty here is that at the extreme, your argument is as long as somebody possible, somebody that would be possible, somebody could become a best consumer, then it's a public injunction to do it. And so you could see where at the extreme it seems like every injunction becomes a public injunction almost, because in theory it's going to – basically any injunction that could affect future behavior for somebody that isn't currently a customer or currently an employee or whatever the class is, it's sort of an issue. As long as that class is capable of growing, it seems to me your argument is whether it's a public injunction. I mean, that's pretty capacious, and it is kind of different than a lot of these cases where it involves advertising or attempts to try to reach out to the general public out there and sort of entrap them in the company's nefarious net or whatever is alleged. There's a difference there, it seems like. So two, I think there are actually two parts to that, and I want to address both of them. So the first one is this idea that, well, if you're right, every injunction is a public injunction. And I think that's not right. So two things on that particular point. The California Supreme Court in footnote 5 of Broughton lists several examples of injunctions that, although they will affect third parties, are private injunctions. And it does this in effort to distinguish between public and private injunctions, and the primary example it gives is copyright cases. And what Broughton says is, look, copyright cases, you're going to get an injunction that says the defendant can't sell the infringing work, and that's going to affect third parties because then they can't buy the infringing work. But it's private because the direct purpose of the injunction is just to remedy the harm to the plaintiff. You know, it affects third parties, but that's not the purpose. And if we want to take that into the consumer protection context, for example, we can take McGill. So the injunction in McGill was, you know, stop duping your cardholders into buying this sham insurance, right? But if the injunction, that's a public injunction. But if the injunction instead said, for anybody who has bought your insurance, your sham insurance, what you actually have to do now is give them the insurance they thought they were getting, that would be a private injunction. And the difference between those two injunctions is that the latter injunction remedies the harm to the class. It remedies the harm just to people who have already had it happen. I'm having trouble finding out how your class isn't in that latter group because your injunction that you're asking for would only benefit people that become creditors. Now, I understand that your argument is, well, they don't get to control whether they're, unlike the cardholders, you know, you get to pick whether you're a cardholder, presumably. But you don't get to pick whether or not you're a creditor for these because your loan gets sold to them. But let's put that aside because it's not clear to me at all that, like, that choice has, whether you're in class or not, your choice in getting into the class, I don't see anything in any of the case law that turns on that. But your injunction will only help people that are in this class of people who are debtors, are debtors of this creditor. How's that not like in the latter example that you were just giving? It's not going to help anybody who is outside that class unless they end up inside that class. I mean, the answer to that is that is, you know, that is the argument that was made in Blair and Mejia and Maldonado. It will never help, you know, an injunction is never going to help anybody. By the time they get the injunction, they could have been in the class had the class been continuing. That's not exactly true because, you know, sort of what I kind of think is the quintessential public injunction is the injunction that says don't advertise your service in a deceptive way to the general public. It's basically saying don't do this thing that's wrong. Pull the fish out there in the sea to get them into your net, as opposed to if the fish are already in your net, then that's a private injunction. It doesn't really depend on how big the net is or anything, just kind of in the net, out of the net, at least seems to be a helpful way to look at it from my perspective. Otherwise, I understand your argument, but your argument seems like it almost turns into every injunction is, I mean, I get, OK, we'll make a copyright exception, but otherwise it's pretty much every injunction that might affect somebody in the future that ends up in a class, which is called a class, is a public injunction. And if they have to get into the class in order to be helped, is that a better distinction? No, Your Honor, and in fact, I think that is what California law is. I mean, that's what Blair says, right? If, you know, Blair made the argument, look, this is only going to help rent-a-center customers. And to be clear, the conduct in Blair wasn't advertising. The conduct in Blair, if you look at the complaint in Blair, which is at ER 52 and 53 in that case, the conduct in Blair is you've entered into rental purchase agreements with customers that violated the law, and we want you to stop doing that. So it wasn't advertising at all. It was these agreements you were entering with your customers are illegal. And Maldonado expressly rejects this idea that it's just false advertising. Mejia does as well. You're saying enter into an agreement with a customer. I mean, it's not like you have a current customer and you're entering into a rental agreement. You have in the course of entering into an agreement with the general public and making them into your customer, you are doing something that is unlawful, I think, was what Blair was involved in. Whereas in your case, it's the class of people. I mean, hard to say they're not similarly situated people. They're people whose car's loan has been sold to Bridgeport or whatever the name is here. It's hard to see how that's not a group of similarly situated people. That's what the Supreme Court said in McGill, right? So the Supreme Court does use the term similarly situated, but it's clear from the context in that case that what it means is just is the members of the literal class in McGill remedying their past harm as opposed to anybody who would in the future be in the position of the plaintiff. And that's what McGill characterizes that statement as restating its earlier description, which was private injunctive relief is relief that primarily resolves a private dispute between the parties and rectifies individual wrongs. In other words, that solves things that happened in the past. Public injunctive relief, and this is what Blair says and Mejia says and Maldonado says, public injunctive relief prevents that harm from happening to anybody else in the future. And that's exactly what this relief does. It prevents anybody else in the future. But they have to become similarly situated first. That's the difficulty I'm having. If you look at the Clifford case, and I recognize that you attempted to distinguish the Clifford case based on the fact that it said it only applies to current employees. But it's not clear when I actually look at the Clifford case that it did only apply to current employees in the sense of like the relief they were asking for. I think it's Clifford case. I think I'm saying that case right. The relief they were asking for was a relief to change their employment practices. That's actually not correct, Your Honor. Actually, if you look at the text of the injunction in Clifford, what they were asking for is Clifford requested the court issue a preliminary injunction in joining the unfair business practices alleged herein. And what the court says is the problem, the reason it wasn't a public injunction in Clifford is the unfair practices alleged herein were specifically with respect to the plaintiff. So failure to pay the plaintiff, failure to properly report the plaintiff's wages. And so what the court said, and that's the way Mejia has read it and the way Maldonado has read it, what the court said is the problem with this injunction, the reason it's not a public injunction, is precisely because the only practices it sought to enjoin were practices that only affected the plaintiff and didn't seek to enjoin future practices. And the reason that California courts have interpreted a public injunction broadly Let me interrupt here. I know Clifford. I've looked at it pretty closely. So you're not correct, because Clifford, part of the relief they were asking for in Clifford was, quote, to prevent further violations of the labor code and the unfair business practice. So they wanted an injunction against the employer to keep the employer from further violations of the labor code. That's a quote from the Clifford case. And so they were actually asking for relief that would have, while they used the word current employees there, it would not just benefit people that were currently employed, but like most employers, they would have new employees that would come on. And if they got an injunction that would stop that, that would benefit those, the same sort of situation you're talking about, people that aren't current employees but become employees. I don't think that's, in fact, correct as to how the court read it. So it is, they said, further violations of the labor code and the unfair practices alleged herein. And the way the court read that request, the alleged herein clarification, is that it was only the practices with respect to the plaintiff. And it expressly says that, and that's exactly how Mejia read it in footnote one, and it's the same as how Maldonado read it. So you may be, you know, it may be that that wasn't what Clifford meant, but that is the way the court read it. I don't know, how would you issue an injunction to say you cannot, as an employer, you can't have any more of these violations of the labor code, but only for your current employees. You know, future employees that you hire violate away. I don't think that. I would not ask for that injunction, and I, you know, but that is how the court read what he was asking. I think the outcome would have been different. What Mejia says in note one is that the outcome would have been different had the request genuinely been public. And I want to, I think it's. Ms. Bennett. Judge Gould.  Yes, I'm sorry, I didn't hear you. I'll let you get back to the interesting discussion with Judge Van Dyke. But I have one rather simple question, just from my own perspective. So as I understand it here, the district court denied a motion to compel arbitration. And an appeal comes to us of that. My perspective question is if we were to affirm the district court's action here so that the arbitration can't be compelled. So then what happens to the claims of the Fernandez's against Bridgecrest? Can they then litigate those claims in the district court? Yes, that's correct. Could they seek to get the same exact injunction they asked for from the district court? I'm not sure I understand that question. Well, they wanted an injunction to prevent some of those repossession practices and the transfer of cars into the other state for sale. Could they seek that same relief in the federal district court? I mean, could the court rule on that rather than having it go to arbitration? Yes, I think the answer, if I'm understanding your question correctly, I think the answer is yes. And that request in general can go either to arbitration or to court, depending on what the parties agree on. The arbitration clause here says that goes to court, and if that goes to court, everything else does too. Does that answer your question? I think so, yes. Okay. If it goes to court, then in the court there can be discovery on all these practices. Yes. So isn't the only thing we're really talking about here is whether these claims get resolved in an arbitration or whether they get resolved in a district court? Yes, I believe that. I believe the answer to that question is yes. And the arbitration clause is very clear in this case that public injunction claims go to court. And if the court, or rather, the arbitration clause that public injunction claims can't be brought at all, which is what California law prohibits and Blair prohibits. And the arbitration clause says if that's void, which it certainly is, then everything goes to court. Okay, thank you. Can I ask a follow-up question to that? Sure. So as I understand, if we were to determine that this is public injunctive relief, then I think what Judge Gould is saying is correct if I understand. Then it would go to the district court, and under your argument that it voids the entire arbitration agreement, everything would go to the district court. If we were to determine that it was not public injunctive relief, and therefore not barred, and therefore didn't trigger the arbitration clause killing term or whatever, then you could still arbitrate, and you could still ask for the injunctive relief in the arbitration, right? Because I think it wouldn't be public injunctive relief by definition. Would the injunction then only affect the parties here, or are you not allowed by the arbitration clause's terms to ask for injunctive relief for a class of similarly situated people who own cars, etc.? So the waiver in the arbitration clause is you will not have the right to be a member or representative in a class or a private attorney general action in court or arbitration. So I think probably Bridgecrest would be, we would argue, a stop from arguing. If they win on the idea that this isn't a public injunction, I think there would be a stop from arguing in arbitration that it is and therefore cannot be awarded. Yes, that's what I'm thinking. So it's not necessarily something that says you can't get an injunction that is both broader than the very parties in arbitration. Here you can get an injunction that says, Bridgecrest, from the arbitrary, you can get an injunction that says, Bridgecrest, don't do this. I believe that's correct, but again, under California law, what we are seeking is a public injunction. Right, right. I'm not trying to get you to concede that it's not. I'm just saying that if a court was to conclude that, it wouldn't necessarily kill the ability of the arbitrator to award this type of relief in the arbitration, would it? I mean, I read that, I think it would, because I think the text of the clause is you cannot seek any injunction as a private attorney general. That's how the California Supreme Court has repeatedly defined this kind of action, is you are serving as a private attorney general to prevent future harm to others. So I do think that's exactly the kind of thing that the arbitration clause prohibits, and it's the kind of thing the California law says you can't prohibit. And I just, if you would give me like 30 seconds, I just want to explain a bit about why California does this and why this distinction about all consumers versus some consumers doesn't make sense. Yeah, so you're already more than three and a half minutes over. But I'll give you 30 seconds. In fact, I'll give you a minute, but then you have to wrap up. Great, thank you. And we're going to give Mr. Sesso extra time to make up for that. I appreciate that. Just very quickly, I want to note that, you know, the public injunction is California's primary method of enforcing its consumer protection statutes. I can't think of any public injunction, including in the false, any injunction at all, including the false advertising cases, where the benefit wouldn't run just to the customers of a particular company, right? And in the false advertising cases, if you say that a loan, for example, has a 5% interest rate and in fact is 5,000%, the only people that are harmed by that are people who actually take out the loan. And so what Maldonado makes clear is that if we say that only a subset of people can get public injunctions, either, you know, all injunctions that affect all Californians or just certain customers of the business, and what that's going to do is vitiate California's consumer protection statutes, because that's how these things are enforced. What it means is that companies can say you are prohibited from bringing this claim at all. And so because that's what a public injunction is. It's a kind of injunction that California law says you are prohibited from waiving. And so if you say that an injunction that just affects some customers is not a public injunction, then what you're saying is companies can prohibit you from bringing that claim at all. And that, again, would just vitiate California's consumer protection statutes. And I think if this court is going to say that, it would make sense to certify the case to the California Supreme Court. We're really well over time. Thank you, counsel, for the excellent argument. Now, Mr. Sesso, I don't know. We have two minutes there. Let's add another three minutes. Your Honor, I can be brief, Your Honor, and I appreciate the panel's time today. I think Judge Van Dyke hit an important point with Clifford in that even if you were to construe that case as seeking to enforce compliance with laws in the future, that wasn't enough. And it's an important distinction because McGill itself draws that distinction between public and private. And that's the question in this case, and that's the question that distinguishes it from Blair and the other matters. Again, the court used the term similarly situated, and it had a reason to do that. And if it was something more or less than that, if it was simply a matter of alleging future harm, that wouldn't be enough. Frankly, Your Honor, with that... Can I ask you a question about the kind of related to the question I was asking your opponent, which is, do you think that the plaintiff here, if this went to arbitration, could ask for an injunction for Bridgecrest not to do the naughty things that they say that they're doing? And not just for themselves, but for other people that are debtors for whom Bridgecrest owns the note. Well, the agreement prohibits the arbitrator from conducting a private attorney general action, and that would be what the UCL claim here would be. But if that claim is a private injunctive relief claim, then it doesn't invalidate the contract, and the arbitration would proceed with respect to the parties. And that's what McGill draws that distinction. I'm not sure. So what is the answer? I know that they could get an injunction saying that you can't do this to the Fernandez anymore, which who cares, because they already got rid of their car. What about the other 27 people? The agreement says the arbitrator is not to conduct that type of proceeding. So any relief they would award would be with respect to the parties in the case. And that's why McGill has that threshold question of private versus public. I guess I'm struggling with that a little bit only because in other contexts, even when you don't have something like California's PAGA, you can usually get an injunction to get people to stop doing something they shouldn't be doing. And again, you would just consider that to be incidentally helping all the other people. So I know why if you win here, you would prefer them not to be able to get essentially a junction beyond their clients. But I'm not sure if that's right. I'm not sure if that's right. I think they couldn't conduct a proceeding that was a class or a private attorney general matter. You don't need a class to get an injunction to tell somebody to stop doing something. No. However, I think this is frankly where the application of McGill bumps up against the FAA preemption question. Because as you interpret McGill that way, that it allows you to sort of pursue that type of relief in arbitration or not, that's where McGill in practice has come into that question of preemption. I also have one question. Again, to indulge my interest in getting a perspective. Since I picked on Ms. Bennett for a question like that, to balance, I'll ask you one. My question is, I probably should remember this from the record. But in the arbitration agreement that was entered, what does it say about how the arbitrators are to be picked? I will pull up the... It identifies... The reason I'm asking that is, you know, if the agreement said that Bridgecrest gets to pick all three arbitrators or something, I could understand why they'd really wanted an arbitration. But if it's like a neutral arbitrator, then I was curious how they and the plaintiffs in the case would devote so much energy to the question of who decides. So the agreement identifies JAMS or the American Arbitration Association. However, it allows the consumer to select either of those administrators. Consumer picks one, and then Bridgecrest picks one, and the organization picks the third? Well, the consumer would select which of the organizations they would want. And then does the organization pick one arbitrator? And then it would depend on which organization. In JAMS, typically you're given a list of potential arbitrators, and the parties then can rank and strike. AAA, American Arbitration Association, will typically assign an arbitrator, depending on the value of the case and the nature of the case. Okay, thank you. Thank you. And if you don't want more time, then Ms. Bennett probably has had plenty of argument time. So unless Judge Owens or Judge Van Dyke have further questions, we should submit this. Judge Owens? I'm good. Thank you, counsel. Great. Thank you, counsel. I'll ask the clerk to please submit Fernandez v. Bridgecrest. And we thank the advocates once more for their excellent arguments, giving us a lot to think about. And you'll hear from us in due course.
judges: Gould, Owens, Vandyke